MOORE *v.* STATE.

4357                                      181 S. W. 2d 26

Opinion delivered June 19, 1944.

*R. H. Peace,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

SMITH, J. Separate informations were filed against appellant Moore and one Roosevelt Morrow, charging each of them with the crime of grand larceny, alleged to have been committed by stealing a hog, the property of Powell Reed. By consent the cases were heard together, a separate verdict being returned in each case. Both were found guilty. Morrow was given a sentence of three years in the penitentiary, while Moore was given a sentence of only one year, and this appeal is from the judgment pronounced upon the verdict against Moore.

Errors assigned for the reversal of this judgment are that the verdict is contrary to law, contrary to the evidence, contrary to the law and the evidence, and is not sustained by the evidence. These assignments, which are in effect one, will be disposed of when we have passed upon the sufficiency of the testimony to support the verdict.

The testimony shows that the hog was killed one Friday afternoon or evening, shortly before Christmas, and was concealed under a stack of lumber in a lumber yard which was adjacent to a field owned by N. T. Goodwin, who testified that he had retired for the night, when two boys, who had been hunting rabbits, called him and told him that they had found a dead hog in the lumber yard, concealed under a pile of lumber.

Goodwin called N. T. Murphy, a neighbor, and they went together to the lumber yard, where they found the hog. They examined the hog to see how it was marked, and found an over half crop in the hog's left ear, and a split and under bit in the right ear, and they recognized this as the mark employed by Reed. Goodwin and Murphy concealed themselves to see who came for the hog. They waited until about 2:30 a. m., and as no one came they went home. Goodwin returned to the lumber yard about 6:00 o'clock the next morning, and found the hog had been removed.

During the following morning Goodwin and Murphy found Morrow peddling pork near the mill, and they told him they wanted to see the hog's head. Morrow went with them to his (Morrow's) home, where they found the head of the hog. Its ears had been cut off next to its head. Morrow then went with them to the lumber yard, and showed them the stack of lumber under which the hog had been hidden, and told them he had taken the hog to his home about 5:00 o'clock that morning. Murphy gave testimony to the same effect.

Reed, the alleged owner, described his mark and testified that after Goodwin had told him about the hog, he climbed up on one of the lumber stacks where he could observe Morrow's house, which was about 200 yards away. He saw Moore go into Morrow's house a time or two. He went over to Morrow's house, and as he reached it he heard Moore say, as Moore came out of the house, "I have got to get someone to peddle this meat."

John Bunn testified that late on the Friday afternoon when the hog was killed, he saw Moore and Morrow across the road, and Moore had a gun which looked like a 22 rifle. The hog was killed by a shot in the head from a 22-caliber rifle.

Jim Harrington testified that Moore told him on Friday, the day the hog was killed, that he was going to kill a hog and would sell the meat for 11c a pound. On the next day Moore told Harrington that "I have got the hog," and Harrington replied, "I have got the money." They went together to Morrow's house, where they found a hog which had been recently dressed. The hog, without its head, weighed 81 pounds, but Moore then asked 20c per pound, and Harrington would not buy any of it because of the increased price which was asked.

Morrow admitted killing the hog and cutting its ears off, but he testified that it was his hog. He exculpated Moore from any complicity in the crime. An attempt was made to prove an alibi for Moore, but that testimony was evidently not credited by the jury. We think the

testimony was amply sufficient to sustain the verdict, and the judgment must be affirmed, and is so ordered.